**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

Chioma Viola Ozuzu and Telon Weathington, individually and on behalf of all others similarly situated,

                      Plaintiffs,

        v.

Van Leeuwen Ice Cream, LLC,

                     Defendant.

-------------------------------------------------------- x

CASE NO. 1:24-cv-8714

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Chioma Viola Ozuzu and Telon Weathington ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this Class Action Complaint against Van Leeuwen Ice Cream, LLC ("Defendant"), based upon personal knowledge as to themselves, and upon information, investigation and belief of their counsel.

**SUMMARY OF THE ACTION**

1.      This class action seeks to challenge the deceptive labeling, marketing, and sale of Defendant's Van Leeuwen Honeycomb ice cream (the "Products").[1]

2.      Specifically, Defendant advertises the Products as "Honeycomb" ice cream, leading reasonable consumers to believe the Products contain honeycomb.

3.      Despite this, the Products do not contain any honeycomb, let alone any honey whatsoever. As such, the Products are falsely and deceptively advertised.

4.      This deceptive marketing practice defies the expectations of reasonable

---

[1] The "Products" are fully defined in Paragraph 14.

consumers. Consumers reasonably expect ice cream products to contain the ingredients plainly described in their names, as is the case with competitor "Honeycomb" ice creams, as well as other Van Leeuwen ice cream varieties.

5.      Plaintiffs and other consumers purchased the Products and paid a premium price based upon their reliance on Defendant's representations that the Products contained honeycomb. Had Plaintiffs and other consumers been aware that the Products do not contain honeycomb, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiffs and Class members have been injured by Defendant's deceptive business practices.

## PARTIES

### I.      Plaintiffs

6.      Plaintiff Chioma Viola Ozuzu is a citizen of New York and currently resides in Brooklyn, New York.  In or around September 2024, Ms. Ozuzu purchased a scoop of Van Leeuwen Honeycomb ice cream from a Van Leeuwen Ice Cream store in New York, New York. After that, in or around October 2024, she purchased a packaged pint of the Van Leeuwen Honeycomb ice cream from Green Valley grocery store in Brooklyn, New York. Based on the name "Honeycomb" appearing on both the store's menu board and the packaged pint's front label, Ms. Ozuzu reasonably believed that the Products she purchased contained honeycomb. Moreover, she did not see any statement or other information on the store's menu board or the pint's front label indicating that the Products did not contain honeycomb. Had she known that the Products did not contain honeycomb, she would not have purchased them, or would have paid significantly less for them. As such, Ms. Ozuzu has been financially injured as a direct result of Defendant's false advertising.

2

7.      Plaintiff Telon Weathington is a citizen of California and currently resides in North Hollywood, California. In or around early 2023, Ms. Weathington purchased a scoop of Van Leeuwen Honeycomb ice cream from a Van Leeuwen Ice Cream store in Studio City, California.  After that, in or around mid-2023, she purchased a packaged pint of the Van Leeuwen Honeycomb ice cream from a Bristol Farms in Los Angeles, California. Based on the name "Honeycomb" appearing on both the store's menu board and the packaged pint's front label, Ms. Weathington reasonably believed that the Products she purchased contained honeycomb. Moreover, she did not see any statement or other information on the store's menu board or the pint's front label indicating that the Products did not contain honeycomb. Had she known that the Products did not contain honeycomb, she would not have purchased them, or would have paid significantly less for them. As such, Ms. Weathington has been financially injured as a direct result of Defendant's false advertising.

## II.    Defendant

8.      Defendant is a Delaware corporation with its principal place of business in Brooklyn, New York. Defendant owns, manages, and operates an international ice cream business, Van Leeuwen Ice Cream. With over 65 brick-and-mortar locations across the United States, Van Leeuwen serves fresh-scooped ice cream to customers in-store. Additionally, the company distributes and sells packaged pints of its ice cream products through its own stores, grocery retailers, and other retail partners nationwide.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least some members of the proposed classes are

citizens of states different than Defendant; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.     This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Products into the stream of commerce within New York. Moreover, Defendant maintains its principal place of business in New York.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to claims occurred in this District. Namely, Plaintiff Ozuzu purchased one of the Products from a Van Leeuwen Ice Cream shop in this District.

### FACTUAL BACKGROUND

12.     Defendant is responsible for the ingredients, formulations, manufacturing, marketing, labeling, advertising, and sale of Van Leeuwen brand ice cream, including the Products at issue here. These products are available to consumers in two formats: as scooped servings in brick-and-mortar Van Leeuwen ice cream stores and as packaged pints sold in both Van Leeuwen brick-and-mortar stores and through retailers nationwide.

13.     Van Leeuwen ice cream is marketed and sold as a premium brand, known for its high-quality, artisanal flavors made from the finest ingredients.[2] The brand emphasizes its commitment to quality, using "ingredients like $12-a-pound Michel Cluizel chocolate and Sicilian pistachios" to create indulgent products.[3] Their ice cream is priced significantly higher than average ice creams, with pints costing around $12 each.[4] This pricing reflects the brand's

---

[2] https://www.pentagram.com/work/van-leeuwen/story
[3] https://thecounter.org/van-leeuwen-artisanal-ice-cream/
[4] https://www.tastingtable.com/780851/best-ice-cream-brands-ranked/

positioning as a luxury product, appealing to consumers seeking a gourmet dessert experience. Their branding strategy, developed with Pentagram, highlights the "purity of [their] ingredients."[5] This premium positioning is even highlighted in the company's Amazon listing, where two of the Products at issue are titled and advertised as "Van Leeuwen **Premium** Honeycomb French Ice Cream"[6]  and "Van Leeuwen **Premium** Peanut Butter Brownie Honeycomb French Ice Cream."[7] (emphasis added).

14.    The Products at issue in this action include the following:

    a.  <u>Ice Cream (available as both scoops and packaged pints):</u>

        1.  Van Leeuwen Honeycomb Ice Cream

        2.  Van Leeuwen Peanut Butter Brownie Honeycomb Ice Cream

    b.  <u>Ice Cream Sandwiches (packaged):</u>

        3.  Van Leeuwen Honeycomb Caramel Ice Cream Sandwich

    c.  <u>Scoop-Only Ice Cream:</u>

        4.  Van Leeuwen Honeycomb Fudge Ripple

15.    Unfortunately for consumers, Defendant engages in false and misleading advertising for the Products to gain a competitive edge in the market, all at the expense of unsuspecting consumers.

16.    Specifically, the front labeling of the packaged Products calls out the ingredient "Honeycomb," leading consumers to reasonably believe that the Products contain honeycomb. *See examples below.*

---

[5] https://www.pentagram.com/work/van-leeuwen/story
[6] https://www.amazon.com/Van-Leeuwen-Cream-French-Honeycomb/dp/B07VRSBFSW/
[7] https://www.amazon.com/Van-Leeuwen-Ultra-Premium-Cream/dp/B082VTXH25





17.     Additionally, the in-store menu advertising of the Products similarly calls out "Honeycomb," leading consumers to reasonably believe that the Products contain honeycomb. *See example on the next page* (red underlining added for emphasis).



18.    Defendant's social media contains even more misleading content about the Products. On Instagram, the company advertises the Products as containing "crunchy honeycomb bits,"[8] while on X (formerly Twitter), Defendant's posts explicitly use the word "HONEY"[9] when promoting the Products. *See examples below* (red outlining added for emphasis).



---

[8] https://www.instagram.com/vanleeuwenicecream/reel/C6_rc7Sg7_V/
[9] https://x.com/vanleeuwen/status/1488537813268185090



19.     Based on the foregoing labeling, marketing and advertising, reasonable consumers purchase the Products with the expectation that the Products contain honeycomb, a premium ingredient.

20.     However, unbeknownst to consumers, ***the Products contain no honeycomb.*** Indeed, the Products contain no honey whatsoever.

21.     As consumers are well aware, honeycombs are the natural structures that honeybees build to store their honey. According to Merriam-Webster Dictionary, a honeycomb is defined as "a mass of hexagonal wax cells built by honeybees in their nest to contain their

brood and stores of honey."[10] Honeycomb is, by definition and nature, intrinsically connected to honey – it is literally a vessel created by bees for the purposes of storing and curing honey. This natural connection between honeycomb and honey is so fundamental that in food products, honeycomb is universally understood to be actual honeycomb containing honey, which consumers can eat as a natural sweetener, topping, or delicacy.[11]

22.    Given this common understanding, when consumers see the term "honeycomb" on food products and menus, they reasonably expect the product to contain honeycomb, or at the very least, honey. This expectation is further reinforced by the Defendant's marketing materials, which use phrases like "crunchy honeycomb bits"[12] and "HONEY"[13] to promote the Products.

23.    Consumer expectations about honeycomb in Defendant's Products are further validated by competing brands that sell "Honeycomb" ice cream products that contain honeycomb, or at the very least, honey. Indeed, even less premium brands than Van Leeuwen, such as Kroger's "White Chocolate Honeycomb Crunch," [14] deliver on consumer expectations by including "Golden Honeycomb Pieces" (which contains honey as an ingredient). Similarly, premium brands like Tillamook's "Sea Salt Honeycomb Toffee,"[15] contain honey in their formulation. *See examples on the following page.*

---

[10] https://www.merriam-webster.com/dictionary/honeycomb
[11] https://www.saratogateaandhoney.com/blogs/honey-education/can-you-eat-honeycomb#:~:text=It%20is%20100%25%20edible%2C%20though,any%20type%20of%20raw%20honey.
[12] https://www.instagram.com/vanleeuwenicecream/reel/C6_rc7Sg7_V/
[13] https://x.com/vanleeuwen/status/1488537813268185090
[14] https://www.kroger.com/p/private-selection-white-chocolate-honeycomb-crunch-ice-cream-tub/0001111010244
[15] https://www.tillamook.com/products/ice-cream/sea-salt-honeycomb-toffee-ice-cream-pint





24.     Even more telling, Van Leeuwen's own product line demonstrates its standard practice of using the ingredients advertised in its product names. For example, Van Leeuwen's "Pumpkin Cheesecake Ice Cream" contains actual pumpkin puree and cream cheese,[16] its "Black Cherry Chip Ice Cream" includes real black cherries and dark chocolate chips,[17] and its "Lemon Poppy Seed Muffin Ice Cream" features lemon curd and poppy seeds.[18] A review of Van Leeuwen's entire product line confirms that every ice cream flavor, except for "Honeycomb," contains the ingredients promised by its name. This makes the "Honeycomb" products particularly deceptive, as it demonstrates that Van Leeuwen knows how to accurately label and advertise its products but chose not to do so in this case.

25.     Clearly, the Products are the exception, missing the very ingredient they are named after. This is not what consumers expect.

26.     Even Van Leeuwen's own website recognizes that consumers reasonably expect least honey in their "Honeycomb" ice cream. The company itself acknowledges on its website that the Product is "***surprisingly***"[19] made without honey – an admission that reveals Defendant's understanding of consumer expectations.[20] Instead of meeting these expectations, Defendant concedes that its product labeling is "confusing" and even declares to consumers "Your whole life has been a lie," demonstrating Defendant's clear understanding that consumers would expect honey in a product labeled "Honeycomb." Defendant then attempts

---

[16] https://vanleeuwenicecream.com/product/pumpkin-cheesecake/
[17] https://vanleeuwenicecream.com/product/black-cherry-chip/
[18] https://vanleeuwenicecream.com/product/lemon-poppy-seed-muffin/
[19] https://vanleeuwenicecream.com/product/honeycomb/
[20] Neither Ms. Ozuzu nor Ms. Weathington viewed this statement on Van Leeuwen's website prior to purchasing the Products.

to justify the absence of honey by comparing honeycomb-without-honey to "ice cream without ice," an illogical false equivalence.

27.    The reasonable belief that the Products contain honeycomb was and continues to be a significant factor in Plaintiffs' and other class members' decisions to purchase the Products. Honeycomb and honey are premium ingredients,[21] and Van Leeuwen Ice Cream is considered by Plaintiffs and class members to be a premium ice cream brand. For these reasons, consumers would rightfully expect the Products to contain honeycomb as advertised.

28.    Consumer reviews of the Products demonstrate both widespread deception and the importance of honeycomb to consumers' purchasing decisions. For example, reviews posted on Amazon.com for the Van Leeuwen Honeycomb ice cream reveal that many consumers feel misled and disappointed upon discovering the absence of honeycomb/honey in the Products. *See examples below and on the following pages.*

K Sigurjons

★☆☆☆☆ **No Honey, Overpriced**
Reviewed in the United States on January 22, 2022
**Verified Purchase**
No honey or honeycomb in the ingredients, just brown rice syrup. It'a terribly overpriced for cheap, overly sweet ice cream.

Helpful  |  Report

Sophie

★☆☆☆☆ **No honey...not even honey flavor**
Reviewed in the United States on April 5, 2022
**Verified Purchase**
Why would you call it "honeycomb" if it doesn't have any honey? Honey is one of my favorite flavors, I love honeycomb, and I was so excited to find honeycomb ice cream - but that's not what this is. It's just overpriced vanilla with a caramel swirl. I feel duped.

One person found this helpful

Helpful  |  Report

---

[21] https://www.healthline.com/nutrition/raw-honeycomb; https://www.bakemag.com/articles/14034-honey-is-about-much-more-than-sugar-reduction.

 Jessica Guernsey

★★★☆☆  **No honeycomb—it's a metaphor**
Reviewed in the United States on February 13, 2021
**Verified Purchase**

I wanted this to be <mark>honey</mark> flavored, or to have real honeycomb, but it turns out it's an esoteric flavor that wishes it was butter crunch. Certainly edible, but ultimately a let-down.

[ Helpful ] | Report

 greenwonton

★☆☆☆☆  **Misleading Flavor Name - Read ice cream description**
Reviewed in the United States on December 20, 2020
**Verified Purchase**

Was excited for a <mark>honey</mark> ice cream. Didn't read the description - I take responsibility for that, but whoever greenlighted this flavor name needs reevaluating

One person found this helpful

[ Helpful ] | Report

 Luke

★★☆☆☆  **NO <mark>HONEY</mark> :(**
Reviewed in the United States on August 30, 2024
**Verified Purchase**

The ingredients are great. But NO <mark>HONEY</mark> in the ingredients, no <mark>honey</mark> taste whatsoever. I was disappointed. It tastes a vanilla with caramel. According to Google, honeycomb is a chewy caramel candy in Australia.

[ Helpful ] | Report

 AA

★☆☆☆☆  **Misleading. No <mark>honey</mark>. Overly sweet caramel.**
Reviewed in the United States on April 18, 2021

I bought Van Leeuwen honeycomb flavor from Whole Foods. I almost threw up at my first bite. I do NOT eat caramel and to say it's honeycomb flavor while there is absolutely NO <mark>honey</mark> or even <mark>honey</mark> flavoring in it is misleading customers. If your flavor is caramel and brown sugar, please call it so. And the blurb you have in fine prints is not funny. There IS ice in icecream. Icecream is made of milk and cream and there is over 60% water content. There ARE ice crystals in icecream. Please stop misleading your customers.



7 people found this helpful

[ Helpful ] | Report

15



Doomspore

★★☆☆☆  **NOT honey flavored**

Reviewed in the United States on September 23, 2022

Verified Purchase

It's called honeycomb but contains no honey and is caramel flavored. Misleading and not worth the expensive price

[ Helpful ]   |   Report

rakehellkat

★☆☆☆☆  **No honey, Hard bits**

Reviewed in the United States on June 6, 2024

There is no honey or honeycomb in this product. I bought this because when I was a kid there was a honey flavored ice cream I really liked. But this one doesn't have any honey, despite the name, disappointing. flavor too sweet. Hard pieces of candy not ideal for every peoples teeth (I had to throw it away, Not worth risk of dental work)

One person found this helpful

[ Helpful ]   |   Report

29.     Moreover, comments made by Reddit users further demonstrate that consumers are misled into believing the Products contain honeycomb, as shown in the following examples, with one user even mistakenly observing that "there's plenty of honey and honeycomb" in the Products:



 r/icecream · 9 mo. ago
bvityl

## Van Leeuwen Honeycomb 🐘 🍯

**Review**

Honeycomb has never been something I was interested in. My husband on the other hand loves all things honey. When Honeymee opened in Los Angeles, ~10 years ago, we'd go all the time. I'd get the plain and he'd get the one with the honeycomb. Any time we host at home, he builds the charcuterie board with honeycomb. He has at least six different types of honey for consuming at all times, for biscuits, english muffins, fried chicken, seasoning bbq, etc.

We'd been obsessed with McConnell's Peppermint Stick ice cream so on our weekly trip to Bristol Farms, we went to grab another pint and discovered the Honeycomb ice cream. I placed it in our cart knowing I wouldn't touch it and my husband would be eating it all. Later that week, he was enjoying his ice cream and as any foodie wife would, I asked for a taste. I could not believe how tasty it was. Much different than what Honeymee offers. The honeycomb isn't waxy or sticky, it's crunchy and complements the creaminess of the Van Leeuwen ice cream base so well. The flavor is light and there's plenty of honey and honeycomb. I enjoy the bigger chunks of honeycomb when I can hear the crunch when I bite down.

I ended up finishing the first pint, so we got a second pint the next time on our grocery trip. Second pint I finished in two sittings. It's my favorite ice cream and I don't like honey. If you come across this flavor, I highly recommend you try it!

It's too good so I wanted to share!



30.     Because the Products do not contain honeycomb, they are falsely and deceptively advertised in violation of the laws set forth below.

31.     As the entity responsible for the development, ingredients, formulation, manufacturing, marketing, advertising, distribution, and sale of the Products, Defendant knew

or should have known that the Products falsely and deceptively represent to contain ingredients that they do not contain.

32.    Defendant also knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Defendant's naming and advertising of the Products as "Honeycomb," and reasonably believe they contain honeycomb. This is especially true given the numerous customer reviews and posts showing consumer deception as a result of Defendant's labeling and advertising.  Nonetheless, Defendant continues to deceptively label and advertise the Products in order to deceive consumers and gain an unfair advantage in the market.

33.    Consumers are willing to pay more for the Products based on the belief that they contain honeycomb. Plaintiffs and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiffs and the Class would not have paid had they been fully informed.

34.    Therefore, Plaintiffs and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## CLASS DEFINITION AND ALLEGATIONS

35.    Plaintiffs bring this matter on behalf of themselves and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiffs Ozuzu and Weathington seek to represent the following Nationwide Class:

**Nationwide Class**

All residents of the U.S. who purchased any of the Products in the U.S. within the applicable statute of limitations period ("Nationwide Class").

36. Pursuant to Rule 23, Plaintiff Ozuzu, in addition to representing the Nationwide Class, seeks to represent the following subclass:

**New York Class**
All residents of New York who purchased any of the Products in New York for personal, family, or household consumption and not for resale within the applicable statute of limitations ("New York Class").

37. Pursuant to Rule 23, Plaintiff Weathington, in addition to representing the Nationwide Class, seeks to represent the following subclass:

**California Class**
All residents of California who purchased any of the Products in California within the applicable statute of limitations period ("California Class").

38. Plaintiffs reserve the right to amend the Class definitions if discovery or further investigation reveal that the Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

39. The following people and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

40.    This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41.    **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiffs but is likely to be ascertained by the Defendant's records. At a minimum, there are likely tens of thousands of Class members.

42.    **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

    a.    whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

    b.    whether reasonable consumers would rely upon Defendant's naming and advertising of the Products and reasonably believe the Products contain honeycomb;

    c.    whether Defendant knew or should have known its representations were false or misleading;

    d.    whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

    e.    whether certification of the Class is appropriate under Rule 23;

    f.    whether Plaintiffs and the members of each Class are entitled to declaratory, equitable, and/or other relief, and the scope of such relief; and

g.  the amount and nature of the relief to be awarded to the Plaintiffs and the Classes, including whether Plaintiffs and the Classes are entitled to punitive damages.

43.    **Typicality:** Plaintiffs' claims are typical of the other Class members because Plaintiffs, as well as Class members, purchased the Products. Plaintiffs and the members of the Class relied on the "Honeycomb" representations made by the Defendant about the Products prior to purchasing the Products. Plaintiffs and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue or misleading.

44.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the proposed Class as their interests do not conflict with the interests of the members of the proposed Class they seek to represent, and they have retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

45.    **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

46.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the

21

issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (*For the Nationwide Class, or in the alternative, the New York Class*)

47.    Plaintiff Ozuzu repeats and realleges Paragraphs 1-46 as if fully set forth herein.

48.    Plaintiff Ozuzu brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the New York Class against Defendant pursuant to New York's General Business Law ("GBL") § 349, *et seq.*

49.    GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

50.    The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Ozuzu and the Nationwide Class seek monetary damages.

51.    Defendant misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers.

52.    Defendant's improper consumer-oriented conduct—including naming and representing that the Products contain honeycomb – is misleading in a material way in that it, *inter alia*, induced Plaintiff Ozuzu and the Nationwide Class to purchase and pay a premium for Defendant's Products when they otherwise would not have, or would have paid less for.

Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

53.    Plaintiff Ozuzu and the Nationwide Class have been injured inasmuch as they paid a premium for the Products that did not contain their advertised ingredients, contrary to Defendant's representations. Accordingly, Plaintiff Ozuzu and the Nationwide Class received less than what they bargained and/or paid for.

54.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Ozuzu and the Nationwide Class have been damaged thereby.

55.    As a result of Defendant's unlawful deceptive acts and practices, Plaintiff Ozuzu and the Nationwide Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350
#### (*For the Nationwide Class, or in the alternative, the New York Class*)

56.    Plaintiff Ozuzu repeats and realleges Paragraphs 1-46 as if fully set forth herein.

55.    Plaintiff Ozuzu brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the New York Class against Defendant pursuant to New York's General Business Law § 350, *et seq.*

57.    New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

58.    GBL § 350-a(1) provides, in part, as follows:

The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

59.    Defendant's naming and advertising of the Products as "Honeycomb" ice cream is a materially misleading representation inasmuch as it misrepresents that the Products contain honeycomb when they do not.

60.    Plaintiff Ozuzu and Nationwide Class members have been injured inasmuch as they relied upon the naming and advertising of the Products and paid a premium for products that did not contain honeycomb, contrary to Defendant's representations. Accordingly, Plaintiff Ozuzu and Nationwide Class members received less than what they bargained and/or paid for.

61.    Defendant's naming and advertising of the Products induced Plaintiff Ozuzu and Nationwide Class members to buy Defendant's Products.

62.    Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

63.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were exposed to Defendant's material misrepresentations.

64.     As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiff Ozuzu and the Nationwide Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>THIRD CLAIM FOR RELIEF</u>
**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**
**California Civil Code § 1750, *et seq*.**
(***On behalf of Plaintiff Weathington and the California Class***)

65.     Plaintiff Weathington repeats and realleges Paragraphs 1-46 as if fully set forth herein.

66.     Plaintiff Weathington brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

67.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff Weathington and members of the California Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

68.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By representing the Products as "Honeycomb" ice cream, Defendant has represented and continues to represent that the Products have characteristics (i.e., that they contain honeycomb) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

69.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Products as "Honeycomb" ice cream, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., that

they contain honeycomb) when they are not of that standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

70.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By representing the Products as "Honeycomb" ice cream, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

71.    At all relevant times, Defendant has known or reasonably should have known that the advertising of the Products' is false and misleading, and that Plaintiff Weathington and other members of the California Class would reasonably and justifiably rely on the "Honeycomb" representation when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing they contain a premium ingredient – honeycomb.

72.    Plaintiff Weathington and members of the California Class have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff Weathington and members of California Class.

73.    Plaintiff Weathington and members of the California Class have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products do not contain honeycomb.

74.    On November 11, 2024, Plaintiff Weathington served a CLRA notice letter on Defendant pursuant to Cal. Civ. Code § 1782(d). Plaintiff Weathington brings this claim for injunctive relief only at this time. Should Defendant fail to rectify its conduct within 30 days of receipt of the letter, Plaintiff Weathington will amend the complaint to add a claim for damages under the CLRA.

75.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff Weathington is filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**California Business & Professions Code § 17500**, *et seq*
**(*On behalf of Plaintiff Weathington and the California Class*)**

76.     Plaintiff Weathington repeats and realleges Paragraphs 1-46 as if fully set forth herein.

77.     Plaintiff Weathington brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

78.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

79.     Defendant has represented and continues to represent to the public, including Plaintiff Weathington and members of the proposed California Class, through its deceptive advertising, that the Products contain honeycomb, when they do not. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

80.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff Weathington and members of the California Class. Plaintiff Weathington therefore requests that the Court cause Defendant to restore this

fraudulently obtained money to them and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Weathington and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"),**
**California Business & Professions Code § 17200*, et seq.***
**(*On behalf of Plaintiff Weathington and the California Class*)**

81.    Plaintiff Weathington repeats and realleges Paragraphs 1-46 as if fully set forth herein.

82.    Plaintiff Weathington brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200 ("UCL").

83.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

84.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the GBL, the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff Weathington and members of the proposed California Class.

85.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are

28

outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' advertising. Deceiving consumers into believing they will receive certain ingredients, but failing to provide those ingredients as advertised, is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff Weathington and members of the proposed California Class.

86.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the Products contain honeycomb when they do not. Because Defendant misled Plaintiff Weathington and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff Weathington and members of the California Class.

87.     Plaintiff Weathington requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Weathington and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

### SIXTH CLAIM FOR RELIEF
### VIOLATIONS OF BREACH OF EXPRESS WARRANTY STATUTE
### N.Y. U.C.C. Law § 2-313
### (*On behalf of Plaintiff Ozuzu and the New York Class*)

88.     Plaintiff Ozuzu repeats and realleges Paragraphs 1-46 as if fully set forth herein.

89.    Plaintiff Ozuzu brings this claim individually and on behalf of the members of the New York Class against Defendant for breach of express warranty under N.Y. U.C.C. Law § 2-313.

90.    New York's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. Law § 2-313.

91.    Plaintiff Ozuzu and members of the New York Class formed a contract with Defendant at the time they purchased the Products. As part of those contracts, Defendant represented the Products as "Honeycomb" ice cream.

92.    The Products' naming and advertising as "Honeycomb" is: (a) an affirmation of fact or promise made by Defendant to consumers that the Products contain honeycomb; (b) became part of the basis of the bargain to purchase the Products when Plaintiff Ozuzu and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

93.    Plaintiff Ozuzu and members of the New York Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

94.    Defendant has breached the express warranties made to Plaintiff Ozuzu and members of the New York Class by failing to provide the Products with honeycomb, as plainly advertised.

95.    Plaintiff Ozuzu and members of the New York Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff Ozuzu and members of the New York Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff Ozuzu and members of the New York Class suffered injury and deserve to recover all damages afforded under the law.

96.    In early November 2024, Plaintiff Ozuzu discovered this breach. On November 11, 2024, Plaintiff Ozuzu, on behalf of herself and others similarly situated, sent a notice and demand letter to Defendant providing notice of Defendant's breach.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATIONS OF BREACH OF EXPRESS WARRANTY STATUTE**
**Cal. Com. Code § 2313**
(*On behalf of Plaintiff Weathington and the California Class*)

97.    Plaintiff Weathington repeats and realleges Paragraphs 1-46 as if fully set forth herein.

98.    Plaintiff Weathington brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

99.    California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com.

31

Code § 2313.

100.    Plaintiff Weathington and members of the California Class formed a contract with Defendant at the time they purchased the Products. As part of those contracts, Defendant represented the Products as "Honeycomb" ice cream.

101.    The Products' naming and advertising as "Honeycomb" is: (a) an affirmation of fact or promise made by Defendant to consumers that the Products contain honeycomb; (b) became part of the basis of the bargain to purchase the Products when Plaintiff Weathington and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

102.    Plaintiff Weathington and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

103.    Defendant has breached the express warranties made to Plaintiff Weathington and members of the California Class by failing to provide the Products with honeycomb, as plainly advertised.

104.    Plaintiff Weathington and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff Weathington and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff Weathington and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

105.    In October 2024, Plaintiff Weathington discovered this breach. On November 11, 2024, Plaintiff Weathington, on behalf of herself and others similarly situated, sent a notice

and demand letter to Defendant providing notice of Defendant's breach.

**EIGHTH CLAIM FOR RELIEF**
**VIOLATIONS OF BREACH OF IMPLIED WARRANTY STATUTE**
**N.Y. U.C.C. Law § 2-314**
***(On behalf of Plaintiff Ozuzu and the New York Class)***

106.    Plaintiff Ozuzu repeats and realleges Paragraphs 1-46 as if fully set forth herein.

107.    Plaintiff Ozuzu brings this claim individually and on behalf of the members of the New York Class who purchased the Products at any brick-and-mortar Van Leeuwen Ice Cream store, against Defendant for breach of implied warranty under N.Y. U.C.C. Law § 2-314.

108.    New York's implied warranty of merchantability statute provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. Law § 2-314.

109.    New York's implied warranty of merchantability statutes also provide that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. Law § 2-314(2)(f).

110.    Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to New York consumers.

111.    By advertising the Products as "Honeycomb" ice cream, Defendant made an implied promise that the Products contain honeycomb. The Products, however, have not conformed to this promise because the Products do not contain honeycomb. Plaintiff Ozuzu, as well as other putative class members, did not receive the goods as impliedly warranted by Defendant to be merchantable.

112.    Therefore, the Products are not merchantable under New York law and Defendant has breached its implied warranty of merchantability in regard to the Products.

113.    If Plaintiff Ozuzu and members of the New York had known that the Products' naming and advertising were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Ozuzu and members of the New York Class have suffered injury and deserve to recover all damages afforded under the law.

114.    In early November 2024, Plaintiff Ozuzu discovered this breach. On November 11, 2024, Plaintiff Ozuzu, on behalf of herself and others similarly situated, sent a notice and demand letter to Defendant providing notice of Defendant's breach.

## NINTH CLAIM FOR RELIEF
### VIOLATIONS OF BREACH OF IMPLIED WARRANTY STATUTE
### Cal. Com. Code § 2313
### (*On behalf of Plaintiff Weathington and the California Class*)

115.    Plaintiff Weathington repeats and realleges Paragraphs 1-46 as if fully set forth herein.

116.    Plaintiff Weathington brings this claim individually and on behalf of the members of the California Class against Defendant for breach of implied warranty under Cal. Com. Code §2314.

117.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

118.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

119.    Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

120.    By advertising the Products as "Honeycomb" ice cream, Defendant made an implied promise that the Products contain honeycomb. The Products, however, have not conformed to this promise because the Products do not contain honeycomb. Plaintiff Weathington, as well as other putative class members, did not receive the goods as impliedly warranted by Defendant to be merchantable.

121.    Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

122.    If Plaintiff Weathington and members of the California Class had known that the Products' naming and advertising were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Weathington and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

**TENTH CLAIM FOR RELIEF**
**IN THE ALTERNATIVE, UNJUST ENRICHMENT**
*(For the Nationwide Class, or in the alternative, for the California Class and New York Class)*

123.    Plaintiffs repeat and reallege Paragraphs 1-46 as if fully set forth herein.

124.    To the extent the Court finds that Plaintiffs and members of the Nationwide Class did not form a contract with Defendant at the time they purchased the Products, Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class

against Defendant. Alternatively, Plaintiffs bring this claim individually on behalf of their respective state classes.

125.    Plaintiffs and the Class purchased Defendant's Products and paid a premium for the Products. Defendant misrepresented that the Products contained honeycomb, which commanded a price premium on the market.

126.    Defendant had knowledge of such benefit and obtained the benefit by its misrepresentations because the misrepresentations induced reasonable consumers to purchase the Products when they would not otherwise have purchased them or would have purchased them at a lower price.

127.    Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiffs and the Class. Defendant currently retains this benefit.

128.    Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefit was obtained by Defendant's misconduct detailed at length in this Complaint.

129.    Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiffs and the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of other members of the proposed Classes, respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendant as follows:

a.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

b.    A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c.    An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiffs and members of the Classes to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

d.    An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

e.    Distribution of any monies recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

f.    an award of all recoverable costs and expenses, including reasonable fees for Plaintiffs' attorneys; and

g.    an award of pre- and post-judgment interest to Plaintiffs and members Each of the Classes if applicable; and, ordering further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs and members of the Classes demand a jury trial on all issues so triable.

DATED: November 15, 2024

**CUSTODIO & DUBEY, LLP**

By: /s/ Robert Abiri

Robert Abiri
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

**TREEHOUSE LAW, LLP**
Benjamin Heikali (SBN 307466)
(*pro hac vice* forthcoming)
Ruhandy Glezakos (SBN 307473)
(*pro hac vice* forthcoming)
Joshua Nassir (SBN 318344)
(*pro hac vice* forthcoming)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com

*Attorney for Plaintiffs and the
Putative Class*